I respectfully dissent from the majority opinion in this case for the reason that I believe that the proximate cause of the accident was the negligence of Rev. Dykes in failing to use extraordinary care in the light of the circumstances existing as to the whereabouts of his beloved 17-months-old niece. The evidence shows clearly that this little child had a strong attachment to her uncle, the Rev. Dykes, and that he was very fond of her; that she was in the habit of playing with him and of following him wherever he went. The majority opinion apparently is based on the proposition that this little child was under the care of Kathryn Dykes, the Reverend Dykes' 22-year-old daughter, and that consequently Rev. Dykes could depend on her to look after the child. I cannot agree with that theory, which appears to be the theory of the trial Court and the majority opinion herein, for the reason that the evidence shows that Kathryn Dykes and the child had no particular attachment, and that as a matter of fact she was not accustomed to looking after the child, and by her own testimony at the time of this tragic accident, she could not recall definitely whether or not the child was actually there on the porch as the Rev. Dykes was making his departure. Rev. Dykes certainly had knowledge of that situation and certainly knew, or should have known, that the child would come to him if she had a chance to do so, and there is no showing that he asked his daughter *Page 444 
to watch out for the child as he left the porch and went towards his automobile. The further indication that he knew there was great danger of the child following him is the fact that he himself testified that as he crossed the lawn and arrived at the rear of his automobile he looked back towards the steps of the porch with the apparent intention of ascertaining whether or not his little niece was following him. Up to that point he was very vigilant, but thereafter, as he entered his car and became engrossed in conversation with his daughter, his vigilance ceased, and during that conversation, which must have lasted some minutes, the child had every opportunity to reach the dangerous position which she did. I gather from the majority opinion that Rev. Dykes traveled 18 feet on the porch, down the steps some 6 feet, thence 19.7 feet to the driveway, thence 7.6 feet to the southwest end of the car, making a total of 51.3 feet when he reached the end of the car and looked back and towards the porch. It stands to reason that his power of locomotion, that is, his walking, was much faster than that of the child. It also stands to reason that he walked this distance while the child was walking the eighteen feet on the porch, allowing a moment's delay for the child to decide to follow her uncle. Therefore, it can be readily assumed that when he reached the rear end of the car, the child had not yet attempted its descent of the steps. It took Rev. Dykes very little time to reach the left front door of the car. In the meantime, the child was going down the steps. The conversation had between Rev. Dykes and his daughter necessarily must have been of sufficient time for the little girl to descend the steps and walk the 19.7 feet to the right rear end of the car, and not a mere moment as Rev. Dykes and the majority opinion would want me to believe.
In my opinion Rev. Dykes should have anticipated this, and his failing to do so, while I, of course, realize it was entirely unintentional on the part of this fine gentleman, in my opinion constitutes civil negligence, which was a proximate cause of the accident.